# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CR-29-TLS |
| | ) | |
| JOSEPH E. SANDERS | ) | |

## ORDER

On August 16, 2017, Defendant Joseph E. Sanders filed a Motion to Suppress [ECF No. 30]. The Defendant also filed a Supplemental Motion to Suppress [ECF No. 47] on October 25, 2017. The Court referred [ECF Nos. 33, 49] the Motions to Magistrate Judge Susan L. Collins to conduct any necessary hearings and to issue a report and recommendation that included proposed findings of fact and recommendations for the disposition of the Motions. The Defendant appeared with Court-appointed counsel Anthony Churchward on November 6, 2017, and November 14, 2017, at hearings before the Magistrate Judge [ECF Nos. 51, 52]. Subsequent to the hearing, Attorney Churchward filed a Motion Withdraw from representation of the Defendant [ECF No. 60]. After a hearing on February 20, 2018 [ECF No. 65], the Court found that the Defendant had knowingly and voluntarily waived his right to counsel and permitted him to represent himself; however, the Court appointed Attorney Churchward as stand-by counsel in the case. The Defendant filed his Brief in Support of his Motion to Suppress [ECF No. 67] on March 13, 2018. On March 19, 2018, he also filed a Motion to Dismiss [ECF No. 69], and the Court advised that the Magistrate Judge should consider that Motion along with other submissions related to the Defendant's Motions to Suppress. The Government filed its Response [ECF No. 83] on April 23, 2018, and the Defendant replied [ECF No. 84] on May 11, 2018. On

June 11, 2018, the Magistrate Judge issued a Report and Recommendation [ECF No. 85], recommending that the Court deny the Defendant's Motions to Suppress.

Pursuant to the Federal Magistrate's Act, Title 28 U.S.C. § 636(b)(1)(A)–(C), the Magistrate Judge does not have authority to issue a final order on these pending Motions. Instead, the Magistrate Judge submits proposed findings of fact and recommendations to a district court. *See United States v. Sabo*, No. 1:10-CR-21, 2010 WL 4628242, at *1 (N.D. Ind. Nov. 8, 2010). If a party files a timely objection to the Magistrate Judge's report and recommendation, § 636(b)(1) provides that a district judge is to make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The court may accept, reject, and/or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The judge also may receive further evidence or recommit the matter to the Magistrate Judge with instructions.

The time for filing objections to the Report and Recommendation has passed, and no objections have been filed. Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

At the hearing, the Government offered the testimony of Fort Wayne Police Department ("FWPD") Officer Geoffrey Norton ("Officer Norton"); United States Marshal Service Deputy John Simpson ("Deputy Simpson"); United States Marshal Service Deputy Eric Anderson ("Deputy Anderson"); Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Task Force Officer ("TFO") Caleb Anderson ("TFO Anderson"); and ATF Special Agent Timothy Worthen ("Special Agent Worthen"). The Defendant offered the testimony of Angelia Freeman and himself.

Officer Norton testified that, while on patrol on March 21, 2017, he noticed that a driver of a silver Hyundai, later identified as the Defendant, gave him a look with widened eyes. In Officer Norton's experience such a look indicated possible criminal activity, so he began to follow the Defendant. The Defendant subsequently accelerated to approximately 55 to 60 miles per hour in an area with a speed limit of 30 miles an hour, leading Officer Norton to believe that the Defendant was attempting to flee. After observing the Defendant fail to appropriately use his turn signal and fail to come to a complete stop at a stop sign, Officer Norton activated his emergency lights. The Defendant continued to accelerate, at which point Officer Norton also activated his emergency sirens. However, the Defendant continued to flee and eventually stopped his car in an alley and attempted to flee on foot.

Officer Norton pursued the Defendant on foot and eventually called for backup. After backup arrived, other officers handcuffed the Defendant and took him to Officer Dameron's car, and which point Officer Dameron searched the Defendant. Officer Dameron found a small bag of marijuana and a substantial amount of cash. FWPD officers also recovered a loaded Glock nine-millimeter pistol near the entrance to the property at which the Defendant was apprehended. The Defendant admitted that he had grabbed the gun prior to exiting his vehicle.

Shortly thereafter, Officer Norton contacted TFO Anderson to inform him that the Defendant had felony convictions and was in possession of a firearm. TFO Anderson interviewed the Defendant who initially indicated that the gun belonged to Ms. Freeman, but he later admitted to possessing the gun and purchasing ammunition. Subsequent phone calls made by the Defendant from the Allen County Jail also indicated that the Defendant had sold narcotics just prior to his arrest, which gave TFO Anderson reason to believe that the Defendant was dealing narcotics.

The Defendant was subsequently indicted for being a felon in possession of a firearm, but he was released from the Allen County Jail on bond before the Government could arrest him pursuant to the federal indictment. TFO Anderson subsequently learned that the Defendant stayed at Ms. Freeman's house and that Ms. Freeman had purchased the firearm at issue in this case. TFO Anderson received permission to apprehend the Defendant, and he advised those that would be participating in the apprehension about the Defendant's criminal history, potential gang affiliation, his propensity to resist arrest and carry firearms, and the potential for Ms. Freeman and her children to be present at the house at the time of apprehension. The Agents determined that these circumstances warranted more caution than usual in apprehending the Defendant.

Armed Agents went to Ms. Freeman's residence on May 2, 2017. A woman, later identified as Ms. Freeman, answered the door when the Agents knocked and announced "U.S. Marshals, police, open the door." Once the door was opened, the Agents smelled the odor of burnt marijuana. After Ms. Freeman confirmed that the Defendant was in the house, the Agents entered the house, instructing Ms. Freeman to remain outside. Deputies Anderson and Simpson called for the Defendant to surrender for about forty-five seconds to one minute before the Defendant appeared from the back of the house with his hands up and cell phone in one of his hands. Instead of complying with repeated commands to lay on the ground and drop the cell phone, the Defendant argued with the Agents. Eventually, one of the Agents handcuffed the Defendant, and Deputy Simpson began a protective sweep of the house to ensure there were no threats on the second floor. While climbing the stairs, Deputy Simpson noticed a large sum of money wrapped in rubber bands. During an ensuing protective sweep, the Agents searched areas of the house where a person could reasonably hide. In the kitchen, Deputy Anderson observed a

black digital scale on the stove with what appeared to be a white powder residue on it, which he believed was cocaine.

At that point in time, the Defendant was transported to the Allen County Jail, and TFO Anderson asked Ms. Freeman if she would be willing to speak with him, to which she responded affirmatively. After speaking with Ms. Freeman for a period of time during which she admitted that the Defendant had access to the pistol at issue, denied knowing about any drug activity, and claimed that the cash that Deputy Simpson observed belonged to her, the Agents presented Ms. Freeman with a "Consent to Search" form, which allowed the Agents to search the house and the vehicles parked outside. Ms. Freeman, after being advised of her rights, signed the form. During the search, the Agents found a safe in Ms. Freeman's bedroom, which she asserted belonged to her. She assisted the Agents in unlocking the safe, and the Agents found a pistol and one of the Defendant's mobile phones. Inside a closet, Deputy Simpson found a gun case with magazines and bullets in a purse. Agents found large quantities of fentanyl, heroin, cocaine, and marijuana, the scales on the kitchen stove, over $3,000 in United States currency, and other contraband in kitchen cabinets.

After completing the search, Special Agent Worthen and TFO Anderson interviewed the Defendant at the jail after advising him of his Miranda rights. The Defendant eventually admitted to owning, purchasing, and selling the narcotics found in Ms. Freeman's house.

Neither party has objected to this assessment or to the Magistrate Judge's characterization of the testimony. Accordingly, the Court adopts the Magistrate Judge's findings of fact regarding the Defendant's Motions.

Finding no clear error, the Court also adopts, in full, the Magistrate Judge's analysis of the law that is applicable to searches and seizures under the Fourth Amendment, the conclusion

that Officer Norton had probable cause to seize the Defendant on March 21, 2017, and the conclusion that the search of Ms. Freeman's residence was lawful. The Court adopts the Magistrate Judge's conclusions that Officer Norton did not need any level of suspicion to justify following the Defendant, that the Defendant was not subjected to seizure until he was subdued by Officer Norton after fleeing on foot, and that Officer Norton had probable cause to detain the Defendant. The Court also adopts the Magistrate Judge's conclusions that the protective sweeps of Ms. Freeman's house were reasonable given the Agents' knowledge and experience, that Ms. Freeman voluntarily consented to the search of her house, and that Ms. Freeman's consent to search the safe was valid. The Court further adopts the Magistrate's conclusion that the Defendant was not coerced into the admissions he gave at the May 2, 2017, interview with Special Agent Worthen and TFO Anderson and that his confession was voluntary.

Therefore, the Court adopts the Report and Recommendation to deny the Defendant's Motion to Suppress and Supplemental Motion to Suppress.

## CONCLUSION

As detailed above, the Court ADOPTS the Report and Recommendation [ECF No. 85], and DENIES the Defendant's Motion to Suppress [ECF No. 30] and Supplemental Motion to Suppress [ECF No. 47] for the reasons set forth by the Magistrate Judge.

SO ORDERED on July 11, 2018.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT