# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CR-29-TLS |
| | ) | |
| JOSEPH E. SANDERS | ) | |

**OPINION AND ORDER**

On August 16, 2017, Defendant Joseph E. Sanders filed a Motion to Suppress [ECF No. 30]. The Defendant also filed a Supplemental Motion to Suppress [ECF No. 47] on October 25, 2017. The Court referred [ECF Nos. 33, 49] the Motions to Magistrate Judge Susan L. Collins to conduct any necessary hearings and to issue a report and recommendation that included proposed findings of fact and recommendations for the disposition of the Motions. The Defendant appeared with Court-appointed counsel Anthony Churchward on November 6, 2017, and November 14, 2017, at hearings before the Magistrate Judge [ECF Nos. 51, 52]. After the hearing, Attorney Churchward moved to withdraw as attorney for the Defendant [ECF No. 60]. After a hearing on February 20, 2018 [ECF No. 65], the Court found that the Defendant had knowingly and voluntarily waived his right to counsel and permitted him to represent himself; however, the Court appointed Attorney Churchward as stand-by counsel in the case. The Defendant filed his Brief in Support of his Motion to Suppress [ECF No. 67] on March 13, 2018. On March 19, 2018, he also filed a Motion to Dismiss [ECF No. 69], and the Court advised [ECF No. 71] that the Magistrate Judge should consider that Motion along with other submissions related to the Defendant's Motions to Suppress. The Government filed its Response [ECF No. 83] on April 23, 2018, and the Defendant replied [ECF No. 84] on May 11, 2018. On June 11,

2018, the Magistrate Judge issued a Report and Recommendation [ECF No. 85], recommending that the Court deny the Defendant's Motions to Suppress.

Pursuant to the Federal Magistrate's Act, Title 28 U.S.C. § 636(b)(1)(A)–(C), a magistrate judge does not have authority to issue a final order on these pending Motions. Instead, the Magistrate Judge submits proposed findings of fact and recommendations to a district court. *See United States v. Sabo*, No. 1:10-CR-21, 2010 WL 4628242, at *1 (N.D. Ind. Nov. 8, 2010). If a party files a timely objection to the magistrate judge's report and recommendation, § 636(b)(1) provides that a district judge is to make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The court may accept, reject, and/or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge also may receive further evidence or recommit the matter to the magistrate judge with instructions.

After no objections were filed either by the Defendant or by the Government, the Court reviewed the Report and Recommendation and adopted it in full [ECF No. 86] on July 11, 2018. Subsequently, the pro se Defendant filed a Motion to Object [ECF No. 92], advising the Court that he never received a copy of the Report and Recommendation at his place of incarceration and therefore was unable to make timely objections. The Court granted [ECF No. 95] his Motion on August 9, 2018, vacated its Opinion and Order [ECF No. 86] adopting the Magistrate Judge's Report and Recommendation, and set a briefing schedule with regard to the Defendant's objections. The Government filed a Notice [ECF No. 98] that it would not be responding to the Defendant's objections and would rely on its previous briefing and the reasoning set for in the Magistrate Judge's Report and Recommendation. Without a response from the Government, the

Defendant need not file a reply for the Court to proceed with its consideration of the Defendant's objections to the Magistrate Judge's Report and Recommendation.

Before turning to the merits of the Defendant's objections, the Court notes that the Defendant has also filed a Motion to Request a Deposition Hearing [ECF No. 93] in which he requests to take the depositions of Task Force Officer Caleb Anderson, United States Marshal Eric Anderson, United States Marshal John Simpson, Special Agent Timothy Worthen, Angelia Freeman, and Officer Geff Norton in order "to question witnesses and confirm the truth" regarding the allegations in the Defendant's Motions to Suppress. The Government filed a Response [ECF No. 99], objecting to the Defendant's request to take depositions of these witnesses. Federal Rule of Criminal Procedure 15 permits depositions when necessary to preserve testimony for trial due to exceptional circumstances. *See United States v. Knox*, 540 F.3d 708, 717 (7th Cir. 2008) (noting that a deposition in a criminal case is "an unusual occurrence."); *United States v. Morrison*, 946 F.2d 484, 490 (7th Cir. 1991) (citing Fed. R. Crim. P. 15). There is no indication that any of these witnesses cannot be present at the trial, and there is therefore no need to preserve their testimony for trial. Thus, the Defendant is not entitled to take the requested depositions pursuant to the Federal Rules of Criminal Procedure.

To the extent that the Defendant's request is one for further evidentiary proceedings related to his Motions to Suppress, the Court also does not find such depositions appropriate. Each of these witnesses testified at the two-day evidentiary hearing before the Magistrate Judge, at which time the Defendant had ample opportunity to cross-examine them. The Court finds that the record before the Magistrate Judge is sufficient to allow this Court to make a de novo determination, where necessary. *See United States v. Raddatz*, 447 U.S. 667, 673–76 (1980)

(holding that de novo review does not require a de novo evidentiary hearing, even when witness credibility is at issue).[1]

**ANALYSIS**

If a party files a timely objection to the magistrate judge's report and recommendation, § 636(b)(1) provides that:

> the district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The court may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge also may receive further evidence or recommit the matter to the magistrate judge with instructions.

Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**A.    Findings of Fact**

At the hearing, the Government offered the testimony of Fort Wayne Police Department ("FWPD") Officer Geoffrey Norton ("Officer Norton"); United States Marshal Service Deputy John Simpson ("Deputy Simpson"); United States Marshal Service Deputy Eric Anderson ("Deputy Anderson"); Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Task Force Officer ("TFO") Caleb Anderson ("TFO Anderson"); and ATF Special Agent Timothy Worthen ("Special Agent Worthen") (collectively "the Officers"). The Defendant offered the testimony of Angelia Freeman and himself. The Magistrate Judge's findings of fact are as follows:

---

[1] The Court notes that it does not have to "exercise its *de novo* discretion in reviewing the credibility determination made by the magistrate judge." *United States v. O'Neill*, 27 F. Supp. 2d 1121, 1142–43 (E.D. Wis. 1998) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

Officer Norton testified that, while on patrol on March 21, 2017, he noticed that a driver of a silver Hyundai, later identified as the Defendant, gave him a look with widened eyes.[2] In Officer Norton's experience such a look indicated possible criminal activity, so he began to follow the Defendant. The Defendant subsequently accelerated to approximately 55 to 60 miles per hour in an area with a speed limit of 30 miles an hour, leading Officer Norton to believe that the Defendant was attempting to flee. After observing the Defendant fail to appropriately use his turn signal and fail to come to a complete stop at a stop sign, Officer Norton activated his emergency lights. The Defendant continued to accelerate, at which point Officer Norton also activated his emergency sirens. However, the Defendant continued to flee and eventually stopped his car in an alley and attempted to flee on foot.

Officer Norton pursued the Defendant on foot and eventually called for backup. After backup arrived, other officers handcuffed the Defendant and took him to another officer's car, at which point the Defendant was searched and a small bag of marijuana and a substantial amount of cash were found. FWPD officers also recovered a loaded Glock nine-millimeter pistol near the entrance to the property at which the Defendant was apprehended. The Defendant admitted that he had grabbed the gun prior to exiting his vehicle.

Shortly thereafter, Officer Norton contacted TFO Anderson to inform him that the Defendant had felony convictions and was in possession of a firearm. TFO Anderson interviewed the Defendant who initially indicated that the gun belonged to Ms. Freeman, but he later admitted to possessing the gun and purchasing ammunition. TFO Anderson also observed a tattoo that indicated that the Defendant was affiliated with a gang called GMB. Subsequent

---

[2] The Defendant asserts that Officer Norton could not possibly have seen such a look due to the Defendant's tinted windows. As explained below, this dispute is irrelevant to the instant Motions to Suppress.

phone calls made by the Defendant from the Allen County Jail also indicated that the Defendant had sold narcotics just prior to his arrest, which gave TFO Anderson reason to believe that the Defendant was dealing narcotics.

The Defendant was subsequently indicted for being a felon in possession of a firearm, but he was released from the Allen County Jail on bond before the Government could arrest him pursuant to the federal indictment. TFO Anderson subsequently learned that the Defendant stayed at Ms. Freeman's house and that Ms. Freeman had purchased the firearm at issue in this case. TFO Anderson received permission to apprehend the Defendant, and he advised those that would be participating in the apprehension about the Defendant's criminal history, potential gang affiliation, his propensity to resist arrest and carry firearms, and the potential for Ms. Freeman and her children to be present at the house at the time of apprehension. The Officers determined that these circumstances warranted more caution than usual in apprehending the Defendant.

Armed Officers went to Ms. Freeman's residence on May 2, 2017. A woman, later identified as Ms. Freeman, answered the door when the Officers knocked and announced "U.S. Marshals, police, open the door." Once the door was opened, the Officers smelled the odor of burnt marijuana. After Ms. Freeman confirmed that the Defendant was in the house, the Officers entered the house, instructing Ms. Freeman to remain outside. Deputies Anderson and Simpson called for the Defendant to surrender for about forty-five seconds to one minute before the Defendant appeared from the back of the house with his hands up and cell phone in one of his hands. Instead of complying with repeated commands to lay on the ground and drop the cell phone, the Defendant argued with the Officers. Eventually, one of the Officers handcuffed the Defendant, and Deputy Simpson began a protective sweep of the house to ensure there were no other individuals in the residence that potentially posed a threat. While climbing the stairs,

Deputy Simpson noticed a large sum of money wrapped in rubber bands. Also as part of the initial protective sweep, Deputy Anderson entered the room to the left and found a small child. During an ensuing protective sweep, the Officers again searched areas of the house where a person could reasonably hide, including the kitchen. In the kitchen, Deputy Anderson observed a black digital scale on the stove with what appeared to be a white powder residue on it, which he believed was cocaine.

At that point in time, the Defendant was transported to the Allen County Jail, and TFO Anderson asked Ms. Freeman if she would be willing to speak with him, to which she responded affirmatively. Only TFO Anderson and Deputy Anderson were present in the room during this interview. TFO Anderson advised Ms. Freeman of her Miranda rights so that she would not feel intimidated, which Ms. Freeman indicated she understood. She admitted that the Defendant had access to the pistol at issue, denied knowing about any drug activity, and claimed that the cash that Deputy Simpson observed belonged to her. Afterwards, TFO Anderson presented Ms. Freeman with a "Consent to Search" form, which allowed the Officers to search the house and the vehicles parked outside. He also read the Consent to Search form aloud to Ms. Freeman. The Consent to Search form specifically advised Ms. Freeman that she could insist that the Officers obtain a warrant prior to the search and that she could revoke her consent at any time. Ms. Freeman, after being advised of her rights, signed the form. During the search, the Officers found a safe in Ms. Freeman's bedroom, which she asserted belonged to her. She assisted the Officers in unlocking the safe, and the Officers found a pistol and one of the Defendant's mobile phones. Inside a closet, Deputy Simpson found a gun case with magazines and bullets in a purse. Officers found large quantities of fentanyl, heroin, cocaine, and marijuana, the scales on the kitchen stove, over $3,000 in cash, and other contraband in kitchen cabinets.

After completing the search, Special Agent Worthen and TFO Anderson interviewed the Defendant at the jail after advising him of his Miranda rights. The Defendant initially denied knowledge that the scales, narcotics, and other contraband were in the residence and denied that he was dealing drugs, but he eventually admitted to owning, purchasing, and selling the narcotics found in Ms. Freeman's house and provided Agent Worthen and TFO Anderson with information on two known narcotics distributors in Fort Wayne and others involved with dealing and buying narcotics, much of which was independently verified.

**B.     Conclusions of Law**

After making the above findings of fact, the Magistrate Judge turned to the application of the law. The Magistrate Judge identified the following legal issues as disputed by the parties: (1) whether Officer Norton had probable cause to stop the Defendant on March 21, 2017; (2) whether the protective sweeps of Ms. Freeman's home were lawful; (3) whether Ms. Freeman voluntarily consented to the search of her home; (4) whether Ms. Freeman had the authority to consent to a search of the safe in her bedroom; and (5) whether the Defendant's confession after his arrest on May 2, 2017, was voluntary. The Magistrate Judge concluded: (1) Officer Norton had probable cause to stop the Defendant on March 21, 2017; (2) the protective sweeps of Ms. Freeman's home were lawful; (3) Ms. Freeman's consent to search her home was voluntary; (4) Ms. Freeman had the authority to consent to a search of the safe in her bedroom; and (5) The Defendant's confession after his arrest on May 2, 2017, was voluntary.

Most of the Defendant's objections are factual in nature and do not attack the Magistrate Judge's conclusions of law. The only conclusions of law to which the Defendant objects is whether Officer Norton had probable cause to detain him on March 21, 2017, and whether the

protective sweeps were lawful. Therefore, the Court must review these conclusion of law de novo, but will review all remaining conclusions of law for clear error.

**C.     The Defendant's Legal Objections**

*1.      Traffic Stop*

The Defendant asserts that the true reason that Officer Norton followed and then detained him was for "driving while black" and that Officer Norton had no probable cause to follow the Defendant. After a de novo review of the record, the Court agrees with the Magistrate Judge's analysis of this issue.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996) (citations omitted). "Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). The probable cause standard is an objective one, not a subjective one, and any ulterior motive an officer may have for making the stop is irrelevant to this inquiry. *See United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2007) ("The officer's subjective motivations for stopping and detaining a suspect are not relevant to the reasonableness inquiry.") (citing *United States v. Barnett*, 505 F.3d 637, 640 (7th Cir. 2003)); *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citing *Whren*, 517 U.S. at 813); *United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cit. 2003); *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998).

The Defendant generally asserts that "[t]he material facts proved that Officer Geff Norton never had reasonable suspicion or probable cause to stop [him] on March 21, 2017." (Def. Obj.

9

5.) The Defendant also asserts that Officer Norton is not credible because he failed to put anything in his initial report about the "look" that the Defendant allegedly gave him. But, the Court finds that such omission is "not particularly significant" and "was not sufficient to put into question the credibility of his testimony." *See United States v. Soria*, No. 08-cr-105, 2009 WL 560029, at *2 (W.D. Wis. Mar. 5, 2009) (finding the failure to mention and interruption in the search at issue did not indicate a lack of credibility). An officer does not need probable cause to follow somebody: turning around and following somebody in a police vehicle does not constitute a seizure under the Fourth Amendment. *See, e.g.*, *United States v. Mays*, 819 F.3d 951, 956 (7th Cir. 2016); *United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013). Therefore, the Court agrees with the Magistrate Judge that even if Officer Norton fabricated his reasons for following the Defendant, the question is whether the Defendant committed any traffic violations prior to being seized, which did not occur until the Defendant was apprehended. *See Collins*, 714 F.3d 543; *United States v. Griffin*, 652 F.3d 793, 800 (7th Cir. 2011) (holding that a seizure cannot occur until the suspect submits to the officer's show of force). Therefore, the Court need not make an independent determination of Officer Norton's subjective reasons for following the Defendant as it has no bearing on whether he had probable cause to detain the Defendant.

The Defendant also asserts that the dash cam video of the incident was altered and that the un-altered version would prove that Officer Norton had no reason to turn around and begin to follow the Defendant. (Def. Obj. 5.) But, whether the dash cam footage was altered to exclude the time period immediately prior to Officer Norton's pursuit of the Defendant is irrelevant to the instant Motions to Suppress because Officer Norton did not need a reason to follow the Defendant, and there is no support in the record, other than the Defendant's bare assertions, that Officer Norton followed the Defendant solely on account of his race. Furthermore, "the

constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813.

Thus, the question is whether Officer Norton observed the Defendant committing any traffic violations prior to detaining him. The dash cam video shows that the Defendant did not fully stop at the stop sign at the intersection of Rudisill Boulevard and Smith Street, in violation of Indiana Code § 9-21-8-32, and did not turn on his turn signal 200 feet prior to the turn, in violation of Indiana Code § 9-21-8-25. Moreover, it is not disputed that the Defendant failed to stop after Officer Norton activated his emergency lights and sirens, which is in violation of Indiana Code § 35-22.1-3-1. Further, even if the Court accepts the Defendant's version of the facts—that Officer Norton could not have seen the Defendant's face due to the Defendant's heavily tinted windows—Officer Norton still would have had probable cause to detain the Defendant for violation of Indiana Code § 9-19-194(c), which allows law enforcement to detain vehicles with windows tinted to block 25% of light.

Therefore, after a de novo review of the record, the Court finds that Officer Norton had probable cause to detain the Defendant, Officer Norton's credibility regarding his subjective intentions notwithstanding.

2. *Protective Sweeps*

"'A protective sweep is a quick and limited search of premises, incident to an arrest,' and can be conducted without a search warrant if the purpose of the search is 'to protect the safety of police officers or others.'" *See United States v. Schmitt*, 770 F.3d 542, 530 (7th Cir. 2014) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). "It is narrowly confined to a cursory

11

visual inspection of those places in which a person might be hiding." *Buie*, 494 U.S. at 327. The Supreme Court has stated:

> [T]he Fourth Amendment would permit the protective sweep undertaken here if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others.

*Id.*

The Defendant's second objection asserts that "the U.S. Marshals failed to file a report on 5-2-17 about why and how the protective sweeps [were] conducted, then presented conflicting statements between cross and direct examination at the Evidentiary Hearing." (Def. Obj. 1–2.) First, the Court notes that a failure to file a report has no bearing on whether the Officers were entitled to conduct the protective sweeps. A report was indeed generated regarding the incident, and "[i]t is not usual for every member of a search team to make out a separate report." *United States v. Soria*, 2009 WL 560029, at *2 (noting that this argument was a "non-issue").

Moreover, the Court does not find that the U.S. Marshals' testimony regarding how and why the sweeps were conducted are conflicting. Deputy Simpson testified that, after "proning" the Defendant, he unholstered his gun and ascended the stairs in order to ensure that there were no other individuals upstairs that could pose a threat to the Officers. (*See* Hrg. Trans. 45:17–24.) By the time Deputy Simpson came back down the stairs, the Defendant had been handcuffed. (*Id.* at 50:22–25.) He confirmed these assertions on cross examination. (*Id.* at 59:5–10.) Deputy Anderson testified that while the Defendant was being handcuffed, he entered a room to the left of where he was standing and encountered a small child. (*Id.* at 76:23–77:9.) Deputy Anderson also testified that he participated in the secondary protective sweep and that the purpose of the secondary sweep is for a second set of eyes to check places in which potentially dangerous

persons could hide when the "adrenaline comes down a little bit" and officers can be more methodical about the sweep. (*Id.* at 77:21–78:24.) Deputy Anderson confirmed these assertions during cross-examination. (*Id.* at 86:8–16.) Both Deputy Simpson and Deputy Anderson testified that conducting a protective sweep—followed by a second protective sweep—is a common practice in cases in which they arrest an individual inside a residence. (*Id.* at 86:4–87:7.) The Court does not find any inherent inconsistency in the testimony regarding the protective sweeps.

The record does not give any indication that the purpose of the protective sweeps in this case did not have a protective purpose. Contrary to the Defendant's assertions, the Officers did not need to observe anyone else in the house or be told that anyone else was in the house to justify a protective sweep. *See United States v. Thompson*, 842 F.3d 1002, 1009 (7th Cir. 2016). They were permitted to draw on their experience and make reasonable inferences based on what they know. *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015). In this case, the Officers were briefed on the Defendant's criminal history, the Defendant's phone calls from prison indicating that he was dealing narcotics, the Defendant's conviction for dealing cocaine, that the Defendant had previously resisted law enforcement in a manner that resulted in an injury to a police officer, that the Defendant was likely armed, and that the Defendant was likely affiliated with a local gang. Deputies Simpson and Anderson also testified that in their experience, drug dealers often have armed associates with them in a house. Nothing in the record contradicts this testimony. These facts are specific and articulable and, taken together with rational inferences, reasonably warranted a protective sweep. The Court finds that the Officers had a reasonable belief that other armed individuals may have been in the residence that could have been dangerous to the Officers or others, and the Defendant's objection is without merit. Therefore, the Court agrees with the Magistrate Judge that the protective sweeps were lawful.

### D. The Defendant's Factual Objections

The Defendant made a total of fourteen objections, which are primarily factual in nature. In his first objection, the Defendant asserts that "[t]he Court misplaced evidence in the Report and Recommendation pertaining to w[h]ere the incrimi[n]ating evidence was discovered during the consented search" of the residence. (Def. Obj. 1.) The Defendant's fifth objection likewise disputes the location in which incriminating evidence was found in the residence. (*Id.* at 2.) However, the Defendant does not indicate to what evidence he refers or what mistake the Magistrate Judge allegedly made in the precise location of the evidence. Nor does the precise location of the evidence affect whether or not it should be suppressed if the Officers had adequate probable cause or consent to search the premises. As noted below, the Court agrees with the Magistrate Judge that the Officers had both probable cause and consent to search Ms. Freeman's home. Therefore, the Court need not rule on these objections because they do not change the outcome.

The Defendant's third objection asserts that "ATF Caleb Anderson present[ed] false statements under oath intentionally to convict me d[ue] to evidence that was never in my possession and [he] never admitted to obtaining." (*Id.* at 2.) The Defendant's tenth objection asserts that he "never possessed Ms. Freeman[']s firearm that was found in her house, claimed any ownership over it, had any contents of [his] in the same place that was discovered, [and] didn't know it was there . . . ." (*Id.*) And the Defendant's eleventh objection asserts that "[t]here is no evidence to convict [him] with Ms. Freeman[']s firearm that she legally had . . . ." (*Id.* at 4.) These are not arguments pertinent to a motion to suppress. Whether the Government can produce sufficient evidence to convict the Defendant is a matter for trial.

The Defendant's fourth and thirteenth objections appear to attack the credibility of ATF Anderson regarding Ms. Freeman's knowledge of the combination to the safe. (*Id.* at 2, 4–5.) After review of the record, the Court does not find anything inherently contradictory in ATF Anderson's testimony whereas, as explained below, Ms. Freeman's and the Defendant's testimony is not entirely credible on this issue.

The Defendant's sixth objection states that he never received a copy of the Report and Recommendation. (*Id.* at 6–7.) This is not an objection to the substance of the Report and Recommendation and is a matter of procedure that the Court has already resolved.

The Defendant's seventh objection asserts that the Magistrate Judge was "bias[ed] and prejudice[d] by honoring the government[']s contentions that are proven lies and not even attempting to take the material facts that [he] presented into consideration." (*Id.* at 3.) This objection is not specific to any of the Magistrate Judge's findings of fact, but rather broadly attacks the proceedings and her credibility determinations. However, the Defendant's only evidence of bias is that the Magistrate Judge believed the Government's witnesses rather than Ms. Freeman and the Defendant. Agreeing with or believing one witness over another alone is not evidence of bias or prejudice, and the Defendant has not pointed to any evidence that would tend to show bias or prejudice on the part of the Magistrate Judge.

The Defendant's eighth objection asserts that the Magistrate Judge "allow[ed] the government to change statements from witnesses over time without evaluating the suspect actions of Mali[c]ious Prosecution." (*Id.*) The first part of this objection, as with the Defendant's seventh objection, broadly attacks the proceedings the Magistrate Judge's credibility determinations and will not be separately discussed. The second part of this objection asserts that the Magistrate Judge should have considered whether the Officers were engaging in malicious

15

prosecution. However, malicious prosecution is a civil cause of action that cannot be addressed during a criminal proceeding because one of the elements of a malicious prosecution claim is that the proceeding be terminated in the Defendant's favor. *See Int'l Med. Corp., Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 844–45 (7th Cir. 2002). This proceeding has not yet been terminated, much less terminated in the Defendant's favor.

The Defendant's ninth objection disputes the Magistrate Judge's finding that he and Ms. Freeman were not credible "for unproven reasons but not even paying no attention to all of the riddled inconsistencies [he] pointed out" in the opposing testimony. (Def. Obj. 3.) In a similar vein as many of his other objections, this objection takes issue with whom the Magistrate Judge found credible. Similarly, in his twelfth objection, the Defendant asserts that there was nothing contradictory in his or Ms. Freeman's statements as given under oath regarding who answered the front door, who had access to the safe, and whether the Defendant remained in the residence. (*Id.*) The Defendant acknowledges that Ms. Freeman's statements on May 2, 2017, however, did contradict these statements. According to the Defendant, this shows only that Ms. Freeman lied on May 2, 2017, but recanted and told the truth at the evidentiary hearing.

The Court notes that his testimony and Ms. Freeman's testimony are inconsistent with each other's. For example, the Defendant testified that he opened the door in response to the Officers' knock and that Ms. Freeman was not with him. (Hrg. Trans. 274:7–10.) However, Ms. Freeman testified at the hearing that she was "standing right there next to [the Defendant]" when he opened the door. (*Id.* at 201:21–23.) In addition to these inconsistencies between each other's testimony at the hearing, the Defendant explains that the contradictions in their testimony at the hearing with their prior statements exist because both of them lied during their prior statements. Explaining away inconsistencies and contradictions by asserting that all of the less favorable

statements were lies does not bolster their credibility. This is made even more apparent by evidence that supports the prior statements—the statements that were supposedly lies—such as whether Ms. Freeman consented to the search of the residence: although she states unequivocally at the hearing that the consent to search form was not read to her (*see id*. 132:15–20), TFO Anderson can be heard reading the consent to search form aloud to her on an audio recording of the interview between her and TFO Anderson.

After a de novo review of the record, the Court agrees with the Magistrate Judge's findings of fact and with her evaluations of the witness's credibility. Accordingly, the Court adopts the Magistrate Judge's findings of fact regarding the Defendant's Motions.

**E.     Remaining Conclusions of Law**

After review of the record, and discerning no clear error, the Court also adopts, in full, the Magistrate Judge's analysis of the law that is applicable to searches and seizures under the Fourth Amendment, that Ms. Freeman voluntarily consented to the search of her house, and that Ms. Freeman's consent to search the safe was valid. The Court also adopts the Magistrate Judge's conclusion that even if Ms. Freeman's consent to search the safe was invalid, the contents would no doubt have been discovered pursuant to a warrant, and therefore the inevitable discovery doctrine does not require the contents of the safe, or other contraband found in the residence, to be suppressed. The Court further adopts the Magistrate's conclusion that the Defendant was not coerced into the admissions he gave at the May 2, 2017, interview with Special Agent Worthen and TFO Anderson and that his confession was voluntary.

Therefore, the Court adopts in full the Magistrate Judge's Report and Recommendation to deny the Defendant's Motion to Suppress and Supplemental Motion to Suppress.

## CONCLUSION

As detailed above, the Court ADOPTS the Report and Recommendation [ECF No. 85], and DENIES the Defendant' Motion to Suppress [ECF No. 30] and Supplemental Motion to Suppress [ECF No. 47]. The Court also DENIES the Defendant's Motion to Request a Deposition Hearing [ECF No. 93].

SO ORDERED on August 20, 2018.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT